## UNITED EMPLOYERS CASUALTY CO. v. LEE.

### No. 3752.

Court of Civil Appeals of Texas. Beaumont.
Dec. 5, 1940.

Rehearing Denied Dec. 31, 1940.

Will R. Saunders and Selden Simpson, both of Dallas, for appellant.

Sumner Williams, Jr., of Lufkin, for appellee.

WALKER, Chief Justice.

This is a workmen's compensation case, filed in district court of Angelina county by appellee, Bud Lee, as an appeal from an adverse award of the Industrial Accident Board, on allegations that he was the employee, J. B. Oliver the employer, and appellant, United Employers Casualty Company, the compensation insurance carrier. For cause of action he alleged that on the 9th day of November, 1939, while trimming a log in the course of his employment with Oliver, "a pine knot flew up and struck him in the right eye causing him to lose sight in the right eye, lose the hearing in his right ear, and causing certain general injuries, dizziness, headaches, and vertigo; that such injuries caused the plaintiff to be totally and permanently incapacitated," and additional facts constituting a cause of action for compensation under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., against appellant as Oliver's compensation insurance carrier, and facts entitling him to a lump-sum settlement. Appellee prayed for the minimum compensation of $7 per week for 401 weeks as for total, permanent disability. Appellant's principal defense was that at the time he was injured appellee was either himself an independent contractor or was the employee of W. P. Daniels, an independent contractor.

Answering special issues, the jury found the following facts: On the 9th day of November, 1939, as a direct and natural result of being struck by a pine knot, appellee sustained an injury to his right eye, his right ear, and to his head, which caused him to suffer total, permanent disability beginning on the 9th day of November, 1939. The injury sustained by him on that date "was a producing cause" of his "total incapacity." At the time he was struck by the pine knot, appellee was "an employee of J. B.

Oliver" and was not "an employee of W. P. Daniels," and he was not an "independent contractor." Appellee's disability is not "confined solely to his right eye"; was not "solely the result of syphilis"; was not "solely the result of hardening of the arteries"; and was not "caused solely by disease." On the verdict, judgment was entered in appellee's favor against appellant for the sum of $2,178.65, to be paid in a lump sum. In its judgment, the court found the following additional facts: "And the Court finding from the undisputed evidence that the defendant had prior to November 9, 1939, issued its policy of workmen's compensation insurance to J. B. Oliver which was in full force and effect on said date and insured the plaintiff as an employee of said J. B. Oliver; that said employer, J. B. Oliver, had notice of such injuries so suffered by the plaintiff immediately after and on the same day he so suffered same; that defendant likewise had knowledge and notice of same within thirty days after such accident; that plaintiff filed his claim for such injuries and for workmen's compensation because thereof with the Industrial Accident Board of the State of Texas in due time and in due and legal form and that all other and further proceedings were had to give this Court jurisdiction of all matters herein involved; and the Court having found all other facts necessary to entitle the plaintiff to the judgment here now rendered, the court finds and determines that the plaintiff is entitled to have and recover of and from the defendant workmen's compensation insurance at the rate of Seven and No/100 Dollars ($7.00) per week for the full period of 401 weeks from and after the 9th day of November, 1939; and that he is entitled to recover all same in a lump sum discounted as provided by law."

Appellant has duly prosecuted its appeal to this court.

On the ground that the uncontroverted evidence showed that appellee was not an employee of J. B. Oliver, but was either an employee of W. P. Daniels, an independent contractor, or was himself an independent contractor, appellant contends: (1) The court erred in overruling its motion for an instructed verdict; (2) the jury's finding that appellee when injured was an employee of J. B. Oliver was without support in the evidence, and was against the great weight and preponderance of the evidence; (3) the finding that appellee when injured was not an employee of W. P. Daniels was without support in the evidence and against the great weight and preponderance of the evidence; (4) the finding that appellee was not himself an independent contractor was without support in the evidence and against the overwhelming weight and preponderance of the evidence; (5) under the evidence, appellee was, as a matter of law, an employee of W. P. Daniels, or was himself an independent contractor. These contentions are overruled; the evidence supports the jury's finding that when injured appellee was an employee of J. B. Oliver, whose compensation insurance was carried by appellant. As supporting this conclusion, we give the following summary of the evidence from the statement made by appellee.

Mr. Oliver was the owner of the timber which appellee was cutting; the work of cutting the timber was for Mr. Oliver; on the day appellee went to work he talked with Mr. Oliver. Before going to work, appellee had been told by Tom Lewis that "if you want to cut logs you can get a little job. * * * You can cut for Mr. Perry's truck and Mr. Oliver's truck. You go on and cut until the old man gets out" —"the old man" was Mr. Oliver. Later in the morning, Mr. Oliver said to appellee: "Don't cut any further than that line; I am going to blaze through here and don't cut any further down the creek." Mr. Oliver told him he would receive 75 cents a thousand; he would not pay any more; he would shut the mill down before he would pay any more. Appellee asked Mr. Oliver for a raise later and Mr. Oliver replied: "No, I can get it cut for 75 cents and if you want to go back on the W.P.A. you can go"; he would not pay any more; if they were not satisfied with 75 cents to let it alone. Mr. Oliver sent him down by the creek to cut a 2 by 4 log "to saw some planks to put on a bridge." Mr. Oliver's truck driver gave appellee his money one time and Mr. Perry's truck driver gave it to him once. When appellee was injured, Mr. Oliver told him to go to see Dr. Clements. On cross-examination, appellee testified that Mr. Perry said to him, "Bud, you go down on the branch until 'the old man' comes; I don't know where he will put you." The first time appellee saw Mr. Daniels was about 9 o'clock the first morning after he had done some work. The only instruction given him by Mr. Daniels

was, "Don't go over (the line blazed) like Mr. Oliver told you. Mr. Oliver paid us off." The morning appellee went to work, Mr. Perry told him, "Mr. Oliver is the general ram-rod, the general knocker, Mr. Oliver is the head knocker of the whole woods; he has the contract and everybody works for him." On redirect examination, appellee testified: "Neither Mr. Lewis nor Mr. Daniels ever told me what to do or how to do it, nor did Mr. Lewis ever pay me anything; Mr. Oliver told me what size stumps to leave and what timber to cut, what size trees to cut." Appellee was paid 75 cents. The mill that Mr. Oliver spoke of closing down was the Swickheimer, at Hoshall. "When I got hurt Mr. Oliver told me to go to that mill to get some papers to fill out; that was the reason I filed my first claim against the mill—that was where Mr. Oliver stayed."

W. P. Daniels testified: "Plaintiff was working for John Oliver. * * * Well, I don't know whether he was working for me or working for Mr. Oliver. * * * That was the way it was—working for Mr. Oliver. * * * I suppose he was working for me; that is the way they have got to have it. * * * I never gave plaintiff any orders whatever; I never told him what size stumps to leave, what size trees to cut, where to cut. * * * Mr. Oliver gave me a check including the pay of all the laborers and told me to pay such laborers; that, if I didn't, he (Mr. Oliver) would have to repay them. * * * They had about two hundred logs cut—Mr. Oliver did—when we first went out there. Them boys were out there, and Mr. Oliver taken a cross-strip of the land and taken them over to the strip he stripped for them, and I went and taken a team to load the logs and about the time I taken it up they were working; I do not know what he told them or nothing about it."

There was a written contract between Mr. Thompson, Mr. Oliver and Mr. Daniels, which Mr. Daniels testified "was in effect before he got the insurance." He testified further that both he and Mr. Oliver hired the men; he paid all the men; Mr. Oliver gave him the money to pay them; Mr. Oliver told him that if he paid any more than 75 cents he would fire him on the job; Mr. Oliver would not allow him to hire anybody to work for 25 cents a thousand; Mr. Oliver looked after the work himself; he walked around through the woods a good deal, and gave the men instructions as to cutting the timber; "My connection with it was keeping the trucks going—loading them up and trying to keep the men out there." As to the written contract: "Mr. Oliver had them drawed up to protect himself so none of the men could sue him if they got hurt, he said, which showed that every man was to take care of himself; he didn't want none of the hands to sue him and he wanted to clear himself; they got the insurance to protect him; he said he had insurance covering all employees; he said he got the insurance and came out and told me; 'Just tear that up (referring to the written contract) they are no good anyway.' Mr. Oliver said to me; 'You go and ask the boys if they are willing to pay part of the insurance' and I did—that money was taken out of the wages of all the employees to pay for the insurance; eight per cent of every dollar they made was taken to pay the insurance; Mr. Oliver held out that much. * * * Mr. Oliver told the employees; 'We just can't pay more than 75 cents and if you want any more you can go and get on the W.P.A.'"

The evidence, as summarized, clearly raised the issue that appellee was an employee of Oliver. The written contract between Oliver and Daniels and Thompson was a mere pretense and, on the evidence, did not control the relation between Oliver and Daniels. Before appellee was hurt, the contract was torn up. Mr. Daniels testified that his relation to the timber cutting was simply to keep the trucks going, and the evidence raised the issue that Mr. Oliver exercised all authority over the employees, fixed their wages and place of work and directed them in their work; took insurance for their protection and deducted a part of their wages to pay for the insurance. The evidence not only raised the issue that appellee was an employee of Oliver, but it was sufficient to support that finding.

Before the Industrial Accident Board, appellee claimed compensation for a cut on his eye, loss of sight in the right eye, and loss of hearing in his right ear. On his appeal from the verdict of the Industrial Accident Board, in addition to these injuries, he alleged constant aches, dizziness and nervous shock, proximately resulting from his injuries. Appellant's fifth proposition is that these additional allegations constituted "a fatal variation between plaintiff's claim before the In-

dustrial Accident Board and that made in the petition, and hence the court had no jurisdiction to hear the latter." Appellee's petition is not subject to appellant's proposition, but his cause of action as plead has support in the following proposition announced by Judge Smedley in Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322; 329: "* * * a general description of the injury is sufficient in the claim made before the board, and * * * in the suit filed to set aside the award of the board the claim may be enlarged to include all injuries proximately resulting from the accident." See also Great American Indemnity Co. v. Stultz, Tex.Civ.App., 56 S.W.2d 200–202; Traders & Gen. Ins. Co. v. Lincecum, Tex.Civ.App., 126 S.W.2d 692; Indemnity Ins. Co. of North America v. Harris, Tex.Civ.App., 53 S.W.2d 631; New Amsterdam Cas. Co. v. Harrington, Tex.Civ.App., 283 S.W. 261; Choate v. Hartford Accident & Ind. Co., Tex.Civ.App., 54 S.W.2d 901.

██ Appellant assigns error against the admission of Daniels' testimony: (1) as to what Oliver told him in regard to insurance taken out by Oliver and the extent of the coverage; (2) that the insurance was taken out for the purpose of covering Bud Lee, and the other employees; (3) that money was taken out of the wages of the employees, including Bud Lee, to pay for the insurance; (4) "that Mr. Oliver had the contract drawn up to protect himself so none of the men could sue him if they got hurt"; (5) the testimony of appellee as to the "conversation he had with Mr. Tom Lewis concerning the plaintiff's alleged contract of hire to Mr. Oliver." Appellant's objections to all this testimony were that it was hearsay, out of the presence of Mr. Oliver, and was not binding on him, and would not show any contract of employment between appellee and Mr. Oliver; that it did not know that money was being taken out of the employee's wages; that the written contract spoke for itself. These exceptions are overruled. Neither Mr. Oliver nor Mr. Daniels was a party to this suit, and the exception that the evidence was hearsay as to them is immaterial. The evidence excepted to was received by the court on the issue of appellee's relation to Oliver—whether he was an employee of Oliver or of Daniels. Certainly, any fact known by Mr. Daniels bearing on this issue was admissible—his relation to the job, the payment of appellee's wages, all things done by Mr. Oliver on the job, the written contract made between him and Mr. Oliver, and the purpose of the contract, and the subsequent abandonment of the contract. Oliver was the man with whom appellee made his contract; that was appellee's theory of his case, and testimony to that effect was admissible. Having alleged a contract between him and Oliver, it was permissible for him to testify as to the terms of the contract.

██ Issue No. 2: "Do you find from a preponderance of the evidence that Bud Lee sustained an injury to his right eye as a direct and natural result of being struck by such pine knot?" was not duplicitous, as assigned by appellant. On the undisputed evidence, appellee was struck by a pine knot and his right eye was injured. We overrule the same assignment as urged against special issue No. 3: "Do you find from a preponderance of the evidence that Bud Lee sustained an injury to his right ear as a direct and natural result of being struck by such pine knot?" and issue No. 4: "Do you find from a preponderance of the evidence that said Bud Lee sustained an injury to his head as a direct and natural result of being struck by said pine knot?" and issue No. 10: "Do you find from a preponderance of the evidence that Bud Lee has not sustained and will not sustain only a partial incapacity as a result of injury, if any, suffered by him on November 9, 1939?"

Appellant assigns error (a) against the word "only." That assignment is overruled. United Employers Cas. Co. v. Robt. L. Knight, Tex.Civ.App., 139 S.W.2d 613; United Employers Cas. Co. v. Obie Lee Daniels, Tex.Civ.App., 142 S.W.2d 607. (b) That the issue is "duplicitous in that it inquires, first, whether plaintiff has not sustained only partial incapacity, which refers to the past, and second, whether he will not sustain only partial incapacity, which refers to the future." That exception is overruled.

██ Special issue No. 11: "What period of time do you find from a preponderance of the evidence such total incapacity, if any, of Bud Lee did continue, or will continue from its beginning to its end?" was conditioned on a negative answer to special issue No. 8, submitting the issue of permanent incapacity.

Special issue No. 12: "Do you find from a preponderance of the evidence that the incapacity of Bud Lee, during the time found by you in answer to Special Issue No. 11, has not been and will not be only partial?" was conditioned on the jury's answering special issue No. 11. The conditional submission of these issues was not error; the issues did not submit independent affirmative defenses, but only elements of the defensive issue on which they were predicated. Appellant's exceptions are overruled.

The judgment of the lower court is affirmed.