**MILLER v. SIMONS.**

No. 2509.

Court of Civil Appeals of Texas. Waco.

May 27, 1943.

Rehearing Denied July 22, 1943.

W. L. Eason, of Waco, for appellant.

Clark & Seley, of Waco, for appellee.

TIREY, Justice.

C. S. Simons brought this suit against Morris Miller to recover the purchase price and commission for thirteen head of cattle purchased from the Livestock Commission Company in Fort Worth, Texas, and charged to his account and paid for by him and delivered to Morris Miller, all of which he alleged was done at the request of Miller. On the verdict of the jury favorable to plaintiff the court awarded judgment in favor of Simons against Miller for $821.71, purchase price and commission, and for legal interest and costs. Defendant has appealed.

Appellant's third point is: "The evidence is insufficient to establish that the defendant Morris Miller ever received the thirteen head of cattle mentioned in plaintiff's pleading." We cannot agree with this contention.

On the matters pertinent to this point the jury found substantially (a) that Miller requested the thirteen head of cattle to be charged to the account of plaintiff; (b) that said cattle in the amount of $792.19 were charged to the account of plaintiff; (c) that said cattle were delivered to Ike Taylor, who at that time was an agent of and in the employ of Miller; and (d) that said account had not been paid by Miller.

Appellant, in his brief, says: "We do not mean that the thirteen head of cattle were not delivered to Taylor. We think they were. We do not mean that plaintiff did not authorize the cattle to be charged to his account. We think he did. The master mind in this transaction was obtaining the cattle from the Commission Company without the payment of any money. Then it became necessary to get them delivered. This master mind had them delivered to Taylor, claiming that he was the agent of defendant. This master mind had the cattle sent to Waco. This master mind had Taylor to testify that he delivered the cattle to Morris Miller's slaughter house at Waco. This master mind then produced Murray. We think this master mind was Abe Berlowitz." Under the foregoing admission, if Taylor was the agent of Miller and in his employ at the time he received the cattle, then the question of the delivery of the cattle to Miller is without dispute. If Taylor was Miller's agent at the time the cattle were delivered to him and was acting at Miller's request, fraud and collusion between Taylor and Berlowitz, if established, would be of no avail against the cause of action asserted by Simons. Miller's pleading consisted solely of a general denial and a plea of payment. (It is without dispute that Simons had not been paid for the cattle in question.) Wichita Falls & Okla. Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, points 1–3, p. 84.

Taylor testified substantially to the effect that on May 2, 1939, he went to Fort Worth at the request of the Miller Meat Company and hauled thirteen head of cattle from Fort Worth to Waco and delivered them into the stock pens of the Miller Meat Company, and that the Miller Meat Company paid him for such hauling. He further testified:

"Q. Did you ever work for Mr. Miller; Miller Meat Company? A. I was driving a truck that belonged to Berlowitz. They were together. * * *

"Q. Did Morris Miller tell you to testify that you didn't deliver the cattle? A. Yes.

"Q. Did Morris Miller offer you money not to testify in this case against him? A. I imagine so.

"Q. Well, do you know whether he did or didn't? Did he? A. Sure.

"Q. 'Isn't it a fact that Morris Miller * * * took you down a side street and down an alley and said he didn't want anybody to see you with him? Isn't that true? A. Yes, sir. * * *

"Q. If Morris Miller says these cattle were not delivered to his pens, is he wrong? A. He is wrong."

On re-cross examination he testified in part:

"Q. That those cattle which you say you got from Fort Worth, those thirteen head, that you never did deliver those cattle to Morris Miller's pens down at the slaughter house? A. Sure I delivered them down there.

"Q. Isn't it a fact that you took those cattle off and made away with them yourself? A. What?

"Q. Took those cattle off and sold them some place else? * * * A. Ask Morris if I did.

"Q. I am asking you the question. A. I told you I unloaded them down there in the pen.

"Q. In whose pen? A. Morris Miller's. * * *

"Q. Did you ever report to Chris * * * the plaintiff in this case, that you had delivered those cattle to Morris Miller? A. I didn't have to report it to Chris. I worked for Miller Meat Company at that time. I just filled my job and that is all I was supposed to do."

J. W. Smith, office manager and bookkeeper for the Drive-In-Livestock Commission Company, testified fully and substantially to the effect that he was familiar with the records relating to the purchase of the cattle in question, and he identified the various records offered in evidence showing in detail how this transaction was handled and that these particular cattle were bought for Morris Miller, through the order buyer Murray, but by authority of Simons, plaintiff, they were charged to Simons' account and delivered to the Miller Meat Company. He testified on cross-examination in part as follows:

"Q. Who did you purchase them from? A. They came out of 'D. I.' That would be Drive-In's alley, and the owner's name was shown.

"Q. But Simons got them? A. Yes, sir.

"Q. So that all that these show is that Simons got thirteen head of cattle, and that he told you to bill them out to the Miller Meat Company; is that correct? A. And that he told me to bill them out to Miller?

"Q. Simons told you that? A. Miller was there waiting for the clearance. * * *

"Q. And you say you made this at the instance of Mr. Simons? A. At the instance of Mr. Simons.

"Q. Simons wasn't there, was he? A. I talked to Simons. Bill Murray placed the call to Mr. Simons at Calvert and they come in to me * * * I can explain this situation to you if you want me to, and it might clear it up. * * * They came to the office with these thirteen head of cattle bought for the account of Morris Miller, or for the Miller Meat Company whom I had had dealings with,—

"Q. That was Taylor? A. The order buyer, W. J. Murray, the man that bought these cattle, our order buyer. He came in with these cattle bought and said he had bought them for Miller. I said it would be impossible for me to clear them out under our present arrangement,—

"Q. Who came for the cattle? A. Ike Taylor was waiting to carry the cattle to the Miller Meat Company."

W. J. Murray (called by plaintiff in rebuttal after both sides had rested) testified substantially to the effect that he was an order buyer for the stockyards, and that he had been in that business about twenty-five years; that he knew plaintiff and defendant; that on or about the 2nd or 3rd of May, 1939, Miller, in person, at the stockyards in Fort Worth, requested him to buy a truck load of cattle and charge them to Simons; that he conferred with the bookkeeper, and that both he and the bookkeeper talked with Simons over the telephone about the transaction, and Simons authorized the cattle to be bought and charged to his account; that Miller saw the cattle and left after the cattle were bought. He identified the tickets and weights of the cattle evidencing the purchase and the clearance ticket authorizing the delivery of the cattle from the stockyards to the witness Taylor.

Defendant Miller testified substantially to the effect that he did not authorize anyone to purchase the cattle in question for him, or request that they be purchased and charged to Simons and delivered to him; that he did not employ the witness Taylor to go to Fort Worth for the purpose of receiving said cattle; and that he did not receive them. He was recalled in rebuttal after the overruling of defendant's motion for continuance and on direct-examination he testified substantially to the effect that

he heard Murray's testimony and that he had no such conversation with Murray as Murray had testified to, and that he did not authorize Murray to buy any cattle for him on that occasion. On cross-examination he testified in part:

"Q. I say though, can you tell this jury now positively that you were not in Fort Worth on May 1st or May 2nd, 1939. A. I couldn't tell them positively, no. I couldn't remember that. * * *

"Q. You heard his (Murray's) testimony that you came up there and went up in the pens with him on about the 2nd of May of 1939. A. I don't remember that. * * * I don't remember if I have been in Fort Worth, of if I bought any cattle down there; * * *

"Q. Is it your testimony now that you don't know whether you were up there on May 2, 1939, or not? Is that correct? A. I don't remember if I was there or not.

"Q. You don't remember if you were there or not? A. I don't think I was."

On re-direct examination Miller said in part:

"Q. Now, Mr. Miller, Mr. Clark asked you if you were up there on May 2nd, and you say you don't know whether you were on that date or not. A. I couldn't say whether I was there on May 2nd or not. * * *

"Q. Were you up there at the time and on the occasion Murray says you were, whether it was May 2nd, or some other day? A. No, sir, I don't think I was.

"Q. Did you talk to Murray? A. Well, I used to see him.

"Q. I mean on the occasion about these thirteen head of cattle? A. No, sir."

Is the evidence sufficient to sustain the jury's finding that Miller received the cattle in question? We think so. But appellant contends that since plaintiff knew, by reason of the telephone conversation, that the cattle in question had been bought for Morris Miller and that he had authorized same to be charged to his account, and since he received a notice the next day showing that they were charged to his account and a day or two later received a full notice showing this transaction, and since Simons had been to Miller's place numerous times thereafter and had collected for other cattle he had sold to Miller and had never mentioned this transaction to Miller until after the matter had been called to his attention by other parties

some eighteen months after it had happened, and since Miller had a trained bookkeeper and his books were presented in court and these cattle were not shown on the books, and since Miller said he did not receive the cattle in question or employ Taylor to receive them for him, the evidence is insufficient to sustain the verdict of the jury that Miller did receive the cattle. We cannot agree with this contention. There is nothing in the testimony or the record that challenges in the least degree the good faith of Simons or his bookkeeper. The failure of Simons, for a period of eighteen months, to make demand on Miller for payment of these cattle shows at most the negligent manner in which he was operating his business. The vital question in the case, as shown by admission in appellant's brief, was whether or not the cattle had been bought at Miller's request and delivered to Taylor, his agent. It is true that Miller specifically denied the testimony of Murray to the effect that he (Miller) was in Fort Worth on the day in question and authorized the cattle to be bought for him and charged to Simon's account, and further specifically denied that he employed Taylor to drive the truck to Fort Worth to receive the cattle, but the jury did not view his testimony favorably. The credibility of the witnesses and the weight to be given their testimony were questions for the determination of the jury. We have carefully reviewed all of the evidence and have found nothing in the record that indicates to us that the jury was actuated by bias or prejudice in passing on the issue tendered, and we think the evidence is ample to sustain this finding.

The judgment is further assailed substantially on the ground that the trial court abused his discretion in permitting plaintiff to file a trial amendment after both sides had rested and after defendant had filed his objections to the court's charge, because said trial amendment set up a new cause of action, and defendant did not have a fair opportunity to meet the allegations thereof; and further abused his discretion in failing to grant defendant's motion to withdraw the case from the jury and grant a continuance. We cannot agree with these contentions.

Paragraph 1 of the plaintiff's original petition alleged: "That on or about the first day of May, 1939, defendant herein requested the plaintiff to purchase for him some cattle, and plaintiff did on or about the third day of May, 1939, at the special instance and request of the defendant, purchase thirteen head of cattle from the Live Stock Commission Company in Fort Worth, and the plaintiff did thereafter deliver said cattle to the pens of the defendant, located in Waco, Texas." Plaintiff further alleged the weights, price paid, and the commission. Paragraphs 1 and 2 of the plaintiff's trial amendment alleged: "(1) That on or about the first day of May, 1939, defendant herein requested one Bill Murray to purchase some cattle for him (defendant) and to charge said cattle to the account of the plaintiff, C. S. Simons. (2) Plaintiff would further show to the court that the said Bill Murray at the request of the defendant did purchase thirteen head of cattle for the defendant from the Drive-In-Livestock Commission Company in Fort Worth, and charged the same to the account of the plaintiff; and further that the defendant thereafter requested his agent, servant and employee Ike Taylor to go to Fort Worth and get the thirteen head of cattle mentioned above and deliver the same to the defendant's pens in Waco, Texas, and the said Ike Taylor, in accordance with said request, did go to Fort Worth and get said cattle and deliver the same to Waco." The remaining allegations in the trial amendment with reference to the weight of the cattle and the amount due and owing by defendant to plaintiff are substantially the same as in the original petition. Defendant, by motion, sought to strike the trial amendment, and in the alternative asked that the jury be discharged and the cause continued, and averred substantially that he was surprised by the allegation in the trial amendment with reference to Bill Murray; that he did not request Bill Murray to purchase any cattle for him and that Murray did not purchase any cattle for him; that he did not request Taylor to go to Fort Worth for the purpose of obtaining the cattle; that Taylor was not his employee; that the defendant was not ready for trial on the issues made by the trial amendment and could not be ready within less than twenty days; that if he were given an opportunity he would be able to disprove the testimony of Bill Murray and the allegations made in the trial amendment; that if said allegations had been made in the original petition defendant would have been ready for trial thereon; that the trial amendment set up a new cause of action; that he had had no transactions with Bill Murray whatsoever and that he

could substantiate the same by ample proof if given an opportunity to do so; that no objection was made to the evidence adduced during the trial on the ground that such evidence was not within the issues made by the pleadings, and that plaintiff, by filing the trial amendment, had abandoned his original cause of action and substituted an entirely new cause of action, and that such trial amendment prejudiced the defendant in his defense upon the merits. The motion was sworn to by defendant. Plaintiff did not file any reply to defendant's motion. Plaintiff's trial amendment was filed April 8, 1942. The court overruled defendant's motion on April 9th, and the pertinent part of this order provided: "That said amendment does not operate as a surprise to the defendant, in that throughout the trial of this case the issues raised by said trial amendment were tried by implied consent of the parties, and treated in all respects as if they had been raised in the pleadings; that the merits of the action will be subserved by the filing of said trial amendment; that the evidence throughout the trial raised said issues as presented in said trial amendment, and that the allowance of such amendment would not prejudice defendant in maintaining his action or defense in any particular; further that, as stated to counsel for defendant on April 8th, at 2:00 o'clock, the case is held open for further evidence if he desires to present same." There is no showing that defendant made any effort to comply with this last provision of the order save and except that defendant was recalled, and we have heretofore set out the pertinent parts of his testimony. The evidence is without dispute that Miller had talked with the witness Taylor before the cause came on for trial, and Miller knew, or could have reasonably anticipated, that Taylor, if offered as a witness, would testify to the effect that he went to Fort Worth for the cattle in question at Miller's request, and that he received them, brought them to Waco, and delivered them to Miller's pens. Since defendant admits in his brief that Simons authorized the cattle to be charged to his account and admits that they were delivered to Taylor, it is of no consequence whether Murray, or some other person, purchased said cattle for Miller, in view of the fact that Taylor testified that he went to Fort Worth at Miller's request and accepted delivery of the cattle and brought them to Waco and delivered them to Miller's pens and that Miller paid him for such service.

It is well settled that Miller could not accept the benefits of the acts of Taylor, his agent, and deny liability therefor. Barrington v. McBroom, Tex.Civ.App., 157 S.W.2d 463, point 3, page 465, and for collation of authorities. We have carefully reviewed the evidence adduced and are of the opinion that the evidence is ample to sustain the trial court in holding that Miller was not surprised by the trial amendment. See Rule 67, Texas Rules of Civil Procedure.

We have carefully considered all other points and are of the opinion that none presents error and each is overruled.

The judgment of the trial court is affirmed.