## THOMAS v. EMPLOYERS REINSURANCE CORP.

No. 4799.

Court of Civil Appeals of Texas. Beaumont.

Sept. 11, 1952.

Rehearing Denied Oct. 15, 1952.

Fulmer & Fairchild, Nacogdoches, for appellant.

H. L. Edwards, Nacogdoches, for appellee.

WALKER, Justice.

This is a Workmen's Compensation case, Jim Thomas is the workman. He is the plaintiff in the cause, and Employers Reinsurance Corporation, the insurer, is the defendant. Plaintiff was overcome by heat on· August 8, 1950, while at work as an "edger" in a sawmill; and in his original petition he alleged that he had sustained a heatstroke which disabled him, and that this disability would be total for 52 weeks and would thereafter be partial, namely, 50% of total, for 115 weeks. Both before trial and during the trial plaintiff prayed leave to amend the petition so as to allege that the total disability was permanent; but leave to amend was denied him, as were his accompanying requests for a continuance. The cause was tried to a jury, and the jury found that plaintiff's total disability lasted 35 weeks, beginning on August 8th, and that this was and would be followed by 22 weeks of partial disability

amounting to 40% of total capacity. Judgment in accordance with this verdict was rendered in plaintiff's behalf against defendant; and from this judgment the plaintiff has appealed.

Plaintiff assigns error to the trial court's denial of his prayers for leave to amend and of his requests for leave to withdraw his announcement of ready and to continue the cause. We shall consider only the denials of leave to amend. The relevant facts are as follows:

On May 15th the cause was set for trial on June 13th; and on the latter date both parties announced ready for trial and a jury was impanelled. It was on the following day, before the pleadings had been read to the jury, that plaintiff made his first request for leave to amend the petition. In support of this request plaintiff's counsel testified that plaintiff's physician, a Dr. McKinney, had previously been of the opinion, and had so informed counsel, that plaintiff would sustain a period of total disability and subsequently a period of partial disability about as the petition alleged; but that during his treatment of the plaintiff he had concluded that plaintiff's disability was total and that it would be permanent; that Dr. McKinney would so testify when called to the stand; and that counsel had just learned of this change of opinion. Counsel testified further that observations of his own during the past few weeks had suggested to him that plaintiff was totally and permanently disabled, and that he had mentioned to defendant's counsel the possibility of amending the petition. It appears that defendant's counsel stated to plaintiff's counsel on these occasions that if the amendment was made he would remove the cause to the U. S. District Court; and defendant's counsel stated to the trial court, in response to plaintiff's request for leave, that he would do so if the leave was granted and, in substance, that grounds for removal would then exist. He requested time to prepare the documents necessary to accomplish the removal if leave to amend was granted the plaintiff.

None of the testimony of plaintiff's counsel was disputed. Defendant's counsel agreed that plaintiff's counsel had men-

tioned to him that the amendment requested might be necessary; and the only ground on which he seems to have resisted a grant of leave to amend was his declaration that he would remove the cause to the U. S. District Court if the leave was granted. It is certain that defendant's counsel did not claim surprise and did not request a continuance.

The trial court seems to have denied plaintiff's request for leave to amend on the ground that the cause would be removed to the U. S. District Court—not to prevent the Federal Courts' taking jurisdiction but because of the delay and the interruption of orderly procedure in the trial court.

Immediately after leave to amend was denied him, the plaintiff requested leave to withdraw his announcement of ready and moved the trial court to continue the cause; and the trial court denied these requests and the cause proceeded to trial.

All of the expert testimony and opinion evidence concerning the cause, the existence or not, the nature and extent of plaintiff's disability came from two physicians, namely, Dr. McKinney, whom plaintiff called, and Dr. Nelson, whom defendant called. Both physicians had treated the plaintiff for the consequences of his injury. The plaintiff worked in a sawmill as an "edger", as we have stated. The work was hard and heavy, and the plaintiff testified to circumstances indicating that he had been overcome by heat while at work; and plaintiff and his wife testified in effect that plaintiff had been totally disabled since this occurrence. Plaintiff had worked as a deliveryman about two weeks during this period for a merchant who sold feedstuffs for animals, but according to plaintiff and his wife, the consequences of the occurrence with which his disability began had compelled him to leave this employment. Dr. McKinney thought that plaintiff had suffered a heatstroke, and that this stroke had caused, or was a cause of, plaintiff's disability; and the substance of his testimony was that plaintiff's disability was total and permanent. Dr. McKinney thought that plaintiff ought not to have done the work as a deliveryman; and the plaintiff's own testimony raised the issue that the plaintiff had taken this employment because it was necessary to supplement his wife's income.

Immediately after Dr. McKinney's testimony ended, the plaintiff made his second request for leave to amend his petition. According to the relevant bill of exceptions this was made "so that the pleadings would conform to the proof." The request was denied, and plaintiff's succeeding request for leave to withdraw his announcement of ready and for continuance of the cause was also denied. The bills of exception show no claim by defendant of surprise, and no reason is stated for the trial court's action. We infer that the trial court acted upon the same ground on which the first request for leave to amend had been denied.

Dr. McKinney's testimony was not objected to as being without support in the pleadings. Defendant's counsel cross-examined Dr. McKinney fully, and it is apparent that defendant was not surprised by this witness' testimony.

Dr. Nelson, called by the defendant, testified after these proceedings had occurred. Plaintiff came under his treatment on the day of the occurrence with which his disability began, namely, August 8, 1950. Plaintiff was in a hospital from then until August 23rd, and subsequently he reported to Dr. Nelson once each week for treatment during an indefinite period. Dr. Nelson did not remember when plaintiff stopped coming to see him, but his treatment of plaintiff ended before Dr. McKinney's began, and Dr. McKinney's first examination of plaintiff was on December 22, 1950. Dr. Nelson's next examination of plaintiff was made on June 5, 1951. Dr. Nelson thought that the plaintiff had suffered a mild cerebral hemorrhage on August 8th, and plaintiff's symptoms indicated to him that the plaintiff had also sustained heat exhaustion but he thought that plaintiff had not suffered a heatstroke. However, he did think that the hemorrhage was caused by diseased blood vessels, and he gave some testimony from which the jury could have found that the heat exhaustion and the exertion required by plaintiff's work were contributing causes of the hemorrhage. He

thought that plaintiff's condition was improving when he ceased to treat the plaintiff (this, as we have stated, was prior to December 22, 1950), and he also thought that on June 5, 1951, which was some ten months after the occurrence of August 8th, the plaintiff was able to do work, although he was uncertain whether plaintiff could do hard manual labor. His testimony raised the issue for the jury that the plaintiff had been totally disabled for a while after the occurrence of August 8th; that this total disability had ended before the examination of June 5th; and that on June 5th and since the plaintiff was partially disabled and would be for some time in the future.

The jury found that plaintiff sustained an accidental injury on August 8th; that in consequence the plaintiff had been totally disabled for a period which began on August 8th and ended on April 8th; and that he had been and would be partially disabled for a period beginning on April 9th and ending on September 8th.

The only evidence to which can be traced the finding that the total disability ended on April 8th is the testimony of Mr. Sisco, the merchant for whom plaintiff had worked as deliveryman. Mr. Sisco said that plaintiff had begun to work for him "in April sometime", and that plaintiff had worked for him almost three weeks. The plaintiff and his wife said that this work had been done at a later time.

The following special issues, to which are appended the jury's answers, submitted the questions concerning the existence and duration of total disability:

(Issue 4) "Do you find—that Jim Thomas sustained total incapacity, if any, as a natural result of the injury, if any, sustained by him on or about August 8, 1950?" Answer: "Yes".

(Issue 5) "When do you find—that such total incapacity, if any, began?" Answer: "August 8, 1950".

(Issue 6) "How long do you find—that such total incapacity if any has continued or will continue from the date of its beginning, if any?" Answer: "April 8, 1951".

The judgment recites that the pleadings were read and that the cause was argued to the jury. Obviously it was plaintiff's petition unamended which was read; and while the arguments made are not reported in the record, it can not be assumed (since the trial court twice refused the plaintiff leave to amend, once to cover Dr. McKinney's testimony of permanent total disability) that plaintiff was permitted nevertheless to request the jury to make a finding of permanent total disability. It seems, on the contrary, a necessary inference that the plaintiff was limited in his argument to his allegations of temporary total disability, followed by a period of partial disability. Plaintiff so states in his brief; and the defendant does not deny the statement.

## Opinion

1. The amendment which plaintiff wished to make would not have alleged a new cause of action, but would have instead, only alleged additional consequences of the original cause of action for which additional compensation benefits would have been payable. It was proper to show these by amendment. Booth v. Texas Employers' Ins. Ass'n, 132 Tex. 237, 123 S.W.2d 322; Maryland Casualty Co. v. Jackson, Tex.Civ. App., 139 S.W.2d 631; Texas Employers Ins. Ass'n v. Patterson, Tex.Civ.App., 231 S.W.2d 898; United Employers Casualty Co. v. Lee, 146 S.W.2d 320; Merritt v. American Mutual Liability Ins. Co., 5 Cir., 67 F.2d 777; Maryland Casualty Co. v. Gerlaske, 5 Cir., 68 F.2d 497; Gulf Casualty Co. v. Tucker, Tex.Civ.App., 201 S. W.2d 81; Phipps v. Reed, Tex.Civ.App., 219 S.W.2d 561.

2. Under Texas Rules of Civil Procedure 63 and T.R. 66 the trial court erred in denying each of plaintiff's requests for leave to amend the petition. It is provided in T.R. 63 that "leave shall be granted * * * unless there be a showing that such amendment will operate as a surprise to the opposite party." T.R. 66 provides for amendments to cover proof not supported by the pleadings; the relevant language is the following: "* * * the court may allow the pleadings to be amended and *shall* do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in main-

taining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence." The defendant never claimed surprise, and the record shows affirmatively that the defendant was not surprised or prejudiced in maintaining its defense by plaintiff's request for leave to amend or by the evidence of permanent total disability proved by Dr. McKinney. On the record it seems that the amendment would have been only a formality. See: Donaldson v. Clark, Tex.Civ.App., 163 S.W.2d 226; Miller v. Simons, Tex.Civ.App., 173 S.W. 2d 182; Butcher v. Tinkle, Tex.Civ.App., 183 S.W.2d 227; Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605; Continental Nat'l Bank v. Conner, 147 Tex. 218, at page 225, 214 S.W.2d 928, 932; "Had objection been made to the testimony, no doubt the court would have allowed the bank to file a trial amendment or granted a postponement under Rule 66 * * *"; Lindsey v. Williams, Tex.Civ.App., 199 S. W.2d 183.

3. It was not material under T.R. 63 and T.R. 66 that defendant would have removed the cause to the U. S. District Court if the plaintiff had been granted leave to amend. Any delay or inconvenience to the defendant would have been a consequence of the defendant's own act in making the removal; and the denial of the amendment under the circumstances seems an infringement on the right of removal. Since the plaintiff did not want to give up the increase in his claim for compensation and since his prayer for leave to amend did not surprise or prejudice the defendant, a denial of leave to amend on the ground that the cause would be removed seems inconsistent with the decisions in American Employers Ins. Co. v. Due, Tex.Civ.App., 166 S.W.2d 160 and Pacific Indemnity Co. v. Blessitt, Tex.Civ.App., 191 S.W.2d 904, the action of the state court accomplishing what the plaintiff himself could not.

4. Defendant argues that the denial of leave to amend was harmless because the jury found under Issue 6 that plaintiff's total disability was for a shorter period of time than the 52 weeks claimed in the petition. This argument raises two questions, both of which must be resolved in favor of the plaintiff.

The first question is whether the issue of permanently total disability was tried by consent under T.R. 67. If it was, plaintiff's claim would have been denied on its merits, and there would be no question of harmless error. The question concerning trial by consent is raised by the form of Issue 6; no objection by defendant to this manner of submission is shown by the record and the form of Issue 6 permitted a finding of permanently total disability—if plaintiff was allowed to request that finding from the jury. We have mentioned Dr. McKinney's testimony that plaintiff's disability was total and permanent on the fact that defendant did not object to this testimony as being without support in the pleadings. However, Issue 6 was also appropriate to the submission of temporary total disability, and the defendant's resistance to and the trial court's denials of leave to amend so as to allege permanently total disability (in lieu of allegations of temporary total disability) are inconsistent with a trial of the issue of permanently total disability by consent. One of these denials of leave came just after plaintiff had made his proof of permanently total disability; and it is inconceivable that the trial court and the defendant then reversed a position twice taken and allowed the plaintiff to submit to the jury a question which had twice been excluded from the petition. We do not understand that defendant claims that the issue of permanently total disability was tried by consent. Plaintiff in effect denies that it was, and we infer that defendant's argument of harmless error is based upon the jury's apparent rejection of Dr. McKinney's testimony that plaintiff's disability was permanent.

This brings us to the second question, namely, whether the record shows that the jury would have found the issue of permanently total disability against the plaintiff if it had been submitted to them. There is some indication in the record that they would have done so. Thus, under Issue 6 they found that plaintiff's total disability ended on April 8th; and since Mr. Sisco testified that plaintiff began to work for

him in April as a deliveryman the finding seems based on his testimony and to imply a belief that this work showed plaintiff's total disability to be ended. Further, under other special issues the jury found that plaintiff had sustained and would sustain a period of partial disability; these findings are consistent with the testimony of defendant's witness Dr. Nelson and inconsistent with that of plaintiff's witness Dr. McKinney. However, if we are correct in our conclusion that plaintiff was not allowed to request the jury to make a finding of permanently total disability then the plaintiff was, in substance, left in the position of repudiating the testimony of Dr. McKinney. For the petition was in flat conflict with Dr. McKinney's testimony and not only was this pleading read to the jury, plaintiff's request to the jury for a finding under Issue 6 must also have been limited to the allegations of disability made in the petition. Under these circumstances it is not surprising that the jury also rejected Dr. McKinney's opinion; everybody else had apparently done so. We construe the record as demonstrating that the error in denying plaintiff leave to amend was harmful to the plaintiff.

Points of Error 1 and 3 are sustained. The judgment of the trial court is reversed and the cause is remanded to that court.