**Frankie Lee PARRAMORE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–92–330–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 15, 1993.

Kerry P. FitzGerald, Dallas, for appellant.

John C. Vance, Crim. Dist. Atty., Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, Robert Huttash, State Prosecuting Atty., Austin, for appellee.

1. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

OPINION

NYE, Chief Justice.

A jury found appellant, Frankie Lee Parramore, guilty of the offense of possession with intent to deliver a controlled substance, to-wit: cocaine, in an amount by aggregate weight, including any adulterants or dilutants, of 400 grams or more and assessed punishment at 37 years in prison, plus a $250,000 fine. By six points of error, appellant attacks the sufficiency of the evidence, and he complains of *Batson*[1] error and hearsay. We affirm.

The State's evidence showed that on May 20, 1991, Officer Spencer talked to appellant and agreed to buy from him one kilogram of cocaine for about $19,500. A little before 3 o'clock the next day, appellant informed Spencer that he would have the cocaine at a later time. About 3 o'clock, appellant informed Spencer that they could meet at 6 o'clock at the 3400 block of Lombardy in Dallas. Later, appellant informed Spencer that he would be at the location about 6:30 and that he would be in a white BMW. Appellant arrived at the location driving a white BMW and waved Spencer over to his apartment. Spencer testified that appellant asked him where they should go to make the exchange. Spencer and appellant discussed several exchange sites. After they agreed on a site, appellant was arrested.

Officers Nichols and McCoy searched the BMW. Nichols found a shaving kit bag underneath the car's rear seat, and McCoy found a baggie in the car's gear-shift boot. Forensic analysis showed that the baggie contained 35.99 grams of cocaine and that the shaving kit bag contained one kilogram of white powder. The white powder contained 822 grams of cocaine.

Officer McCoy testified that cocaine was imported into this country as a white powder in kilo-size quantities and that it was processed and sold to users as either crack

1712, 90 L.Ed.2d 69 (1986).

cocaine or as grams of powdered cocaine. He stated that the street value of the kilo seized from appellant's car was over $200,000.

■ By points one through four, appellant complains that the trial court erred by denying his claim that the State violated the *Batson* rule and art. 35.261 of the Texas Code of Criminal Procedure when it exercised peremptory challenges against four black venirepersons in a racially discriminatory manner. In *Batson*, the United States Supreme Court outlined a method of proving racial discrimination in the jury-selection process. Once a defendant makes a *prima facie* showing of the State's discriminatory use of peremptory challenges, the burden shifts to the State to give a neutral explanation for the peremptory challenges. The Court emphasized that this explanation must be clear and reasonably specific. General assertions that the prosecutor's reasons are not discriminatory or that the challenged venireperson would be partial to the defendant because of their shared race are not sufficient to rebut a *prima facie* case.

■ After a prosecutor gives nondiscriminatory reasons for striking prospective minority jurors from the venire, the trial judge must determine whether these facially neutral explanations are contrived to avoid admitting acts of discrimination. *Emerson v. State,* 851 S.W.2d 269, 273 (Tex.Crim.App.1993). This must be done because a prosecutor, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his or her primary factor in deciding to strike the juror. The trial judge, as supervisor of the voir dire, is in a position to readily perceive discrepancies during the jury-selection process. Evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within the trial court's province. The trial judge may not, however, merely accept the prosecutor's specific reasons at face value. *Emerson,* at 273.

■ In *Vargas v. State,*[2] the Court of Criminal Appeals adopted the "clear error standard of review" when analyzing *Batson* claims. The Court found that "[d]eference to the trial court findings on the issue of discriminatory intent makes particular sense in this context because, as was noted in *Batson,* the finding will 'largely turn on evaluation of credibility.'" *Vargas,* 838 S.W.2d at 554, quoting *Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). In applying this standard, a determination is made whether the record supports the trial judge's decision so that it is not clearly erroneous. This includes a review of the voir dire, the venire's racial makeup, the prosecutor's neutral explanations, and appellant's rebuttal and impeaching evidence.

In this case, appellant's *Batson* challenges concerned two separate events. Juror Quarles's juror-information card showed that he had served on a criminal jury. During voir dire, he denied that he had served on a criminal jury. Later, defense counsel asked the venire whether they considered punishment, deterrence, or rehabilitation as most important in sentencing a person. Jurors Walden, Smith, Benson, Jones, Banks, and Baron stated that rehabilitation was most important. After voir dire examination, defense counsel objected to the State's use of its peremptory challenges to strike four black venirepersons, James Smith, Gregory Jones, Sylvia Banks, and Danny Quarles. (Appellant is black.) At the trial court's request, the State proffered its response to defense counsel's objection setting forth the reasons for its strikes. The State informed the trial court that it struck Smith, Jones, and Banks because they indicated that rehabilitation was most important. It struck Quarles because of an inconsistency between his oral response and his response on his juror-information form. The trial court found that the State gave race-neutral reasons for exercising its peremptory challenges and overruled the objection.

■ On appeal, appellant argues that the State did not strike non-black jurors Wal-

**2.** 838 S.W.2d 552 (Tex.Crim.App.1992).

den and Benson, who, like Smith, Jones, and Banks, stated that rehabilitation was most important. The record shows, however, that the State and defense counsel agreed to excuse Walden and that Benson was excused for cause.

■ Concerning the State's strike of Quarles, this issue was addressed in *Rodgers v. State*, 725 S.W.2d 477 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). In *Rodgers*, the State struck a black venireman because it felt that there was an inconsistency between his oral response and his response on his juror-information form. The appellate court held that the State's reason for striking this venireman was neutral and legitimate.

In this case, we hold that the trial court had a reasonable basis to decide that the State's reason for striking Quarles was neutral and legitimate. *See Rodgers*, 725 S.W.2d at 480–81.

■ By point five, appellant attacks the sufficiency of the evidence to support his conviction. In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). We must take each case and review all the evidence to determine whether the State has proven beyond a reasonable doubt every element of the alleged crime and not just a plausible explanation of the crime. *Butler*, 769 S.W.2d at 239.

■ To prove a defendant guilty of unlawfully possessing a controlled substance, the State must show that the defendant intentionally or knowingly exercised actual care, custody, control or management over a controlled substance. *Humason v. State*, 728 S.W.2d 363, 365 (Tex.Crim.App.1987), and that the accused knew that the matter he possessed was contraband. *Johnson v. State*, 658 S.W.2d 623, 627 (Tex.Crim.App.1983); *Acosta v. State*, 752 S.W.2d 706, 707 (Tex.App.—Corpus Christi 1988, pet. ref'd). In other words,

there must be some independent facts and circumstances which affirmatively link the accused to the contraband so that we can conclude that he had knowledge of the contraband as well as management or control over it. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985); *Villarreal v. State*, 703 S.W.2d 301, 305 (Tex. App.—Corpus Christi 1985, no pet.).

■ To obtain a conviction in this case, the application paragraph required the State to prove that appellant possessed with intent to deliver cocaine in an amount by aggregate weight, including any adulterants or dilutants, of 400 grams or more. The evidence showed that: (1) Spencer talked to appellant and agreed to buy from him one kilogram of cocaine for about $19,500; (2) appellant informed Spencer that he (appellant) would have the cocaine; (3) appellant was the driver and sole occupant of the car in which the cocaine was found; and (4) the cocaine was conveniently accessible to appellant. We hold that these factors establish the affirmative link necessary to show that appellant possessed the cocaine. *See Acosta*, 752 S.W.2d at 708; *Villarreal*, 703 S.W.2d at 305.

■ Concerning intent to deliver, intent may be inferred from the accused's acts, words, or conduct. *Romo v. State*, 593 S.W.2d 690, 693 (Tex.Crim.App.1980). Knowledge and intent can be inferred from conduct of, remarks by, and circumstances surrounding the acts engaged in by an accused. *Allen v. State*, 478 S.W.2d 946, 947 (Tex.Crim.App.1972); *Bean v. State*, 641 S.W.2d 351, 352 (Tex.App.—Corpus Christi 1982, no pet.). Additionally, intent is a fact question to be determined by the trier of facts from all the facts and circumstances in evidence. *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex.Crim.App.1974).

■ In this case, the evidence showed that: (1) appellant agreed to exchange cocaine for money; (2) appellant possessed the kilo containing over 800 grams of cocaine when he was arrested; and (3) kilo-size quantities of cocaine were sold to users as either crack cocaine or as grams of powdered cocaine. We hold that the

evidence was sufficient to show that appellant intended to deliver the cocaine. *See Pitts v. State,* 731 S.W.2d 687, 692 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd); *Hurtado v. State,* 722 S.W.2d 184, 188 (Tex.App.—Houston [14th Dist.] 1986, pet ref'd). After reviewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

By point six, appellant complains that the trial court committed reversible error by admitting into evidence State's Exhibit 11, a document which contained hearsay information. Officer Nichols identified Exhibit 11 as the package in which he placed the cocaine. Officer Montemayor testified that he filled out the evidence tag on Exhibit 11. The State's chemist testified that Exhibit 11 contained 822 grams of cocaine. When the State offered Exhibit 11 into evidence, defense counsel objected that the evidence tag included the hearsay statement: " 'One bag of Cocaine.' " The trial court overruled the objection, and Exhibit 11 was admitted into evidence.

Rule 801(d) of the Texas Rules of Criminal Evidence provides that hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM. EVID. 801(d). In this case, Officer Montemayor's statements on the evidence tag, though hearsay, were harmless since testimony had previously shown that Exhibit 11 contained cocaine.

The trial court's judgment is AFFIRMED.