

**NUMBER 13-06-578-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**MICHAEL JOHN REYES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the County Court at Law No. 1 of Hays County, Texas.**

---

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Opinion by Justice Benavides**

A jury convicted appellant, Michael John Reyes, of attempted improper photography, a misdemeanor offense. *See* TEX. PENAL CODE ANN. §§ 15.01, 21.15 (Vernon 2003). The trial court assessed a $4,000 fine and one year confinement in the Hays County Jail, which was suspended and probated for two years. Reyes raises three issues on appeal, arguing that: (1) the trial court erred by allowing the jury to hear Reyes

invoking his right to end a custodial interrogation; (2) the trial court abused its discretion by granting the State's motion to strike the defendant's expert witness; and (3) the evidence is legally and factually insufficient to support a guilty verdict. We affirm.

## I. Background

On June 20, 2004, thirteen-year-old C.M. was shopping with her parents at the Tanger Outlet Mall in San Marcos, Texas. She was shopping in Rue 21, a clothing store that sells clothing targeted at young females, and she was wearing a skirt while she shopped.

Gladys De La Garza was also a customer at Rue 21. De La Garza testified that she was approximately five feet away from C.M., who was looking at clothes, when she witnessed Reyes crouch down on his knee directly behind C.M.. Reyes was so close to C.M. that De La Garza initially thought they were there together. De La Garza then noticed that Reyes had a cell phone in his hand.

Reyes's phone was a "flip phone,"[1] which he had open and held with the face turned outwards. De La Garza testified that she observed Reyes place the phone under C.M.'s skirt and heard the phone's camera "click." De La Garza stated that when Reyes noticed her moving towards them, he quickly got up and walked out of the store.

De La Garza then approached C.M. and stated that she thought Reyes had taken a picture under her skirt. C.M. immediately began to cry and went to find her parents. C.M. and her parents returned to the store, and her mother began to ask around to

---

[1] A "flip phone" is a "cell phone with one hinged section that opens up for use and folds up when not in use." Encarta Dictionary, *available at* http://encarta.msn.com/dictionary_561547107/flip_phone.html (last visited June 29, 2008).

2

determine who had seen the incident. De La Garza then told C.M.'s mother what she witnessed and described Reyes as wearing a cap and a t-shirt with an "I Force" logo. She also informed them of the direction he took when he rushed out of the store.

C.M.'s parents told the store clerk to call security and the police and then left Rue 21 to go look for Reyes. C.M.'s mother located Reyes in another store. C.M.'s mother testified that when she approached Reyes, he was shaking. Unprovoked, he stated, "I didn't do anything. I didn't take any pictures. I didn't do anything. Here is my phone." She then grabbed the door to prevent him from leaving. However, Reyes pushed her to the side and walked out. The security officer arrived at that point and was trying to ask Reyes questions, but Reyes just ignored the officer and continued to walk away. The police showed up shortly after and detained him.

Officer Leonard was assigned to the outlet mall on the day in question and responded to the call from the mall security. Officer Leonard first reported to Rue 21 with Corporal Wellman, where C.M., her family, a security guard, and De La Garza were present. Two other officers went to the other side of the mall to find Reyes. While at Rue 21, De La Garza and the security officer described Reyes as wearing a blue shirt with "I Force" written largely on the back. Officer Leonard was only at Rue 21 for a short period of time, and he left Corporal Wellman at the store and went to locate the other officers and Reyes.

Officer Leonard testified that his purpose for going with the other officers and Reyes was to ensure that they "had the right subject, that it was the right description, and then to actually transport a witness to that location for identification." Once he met the other officers, who had detained Reyes, Officer Leonard concluded that Reyes matched the

description that had been reported to him. Officer Leonard then transported De La Garza to where Reyes was so that she could identify him.

De La Garza positively identified Reyes to Officer Leonard, and Reyes was arrested. Upon arrest, the police seized Reyes's phone and examined his saved pictures. No pictures of C.M. were found on his phone.[2] Reyes was then charged with felony improper photography under section 21.15 of the Texas Penal Code, but that charge was reduced to a misdemeanor attempt charge under Texas Penal Code section 15.01. TEX. PENAL CODE ANN. §§ 15.01, 21.15.

The State filed a request for notice of expert witnesses on April 26, 2005. The trial court conducted a hearing on June 14, 2005. At the hearing, Reyes's counsel, Anthony Cantrell, orally informed the court and the district attorney present at the hearing, Heather Youree, that the defense had an expert witness named JoAnne Murphey. Cantrell also stated that he would provide the expert's address and phone number. Cantrell claims that he gave Youree the information immediately after the hearing.

However, a different judge and a different district attorney appeared for trial on July 11, 2006. Before trial began, the State moved to strike Reyes's expert witness under article 39.14(b) of the Texas Code of Criminal Procedure. See TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Vernon Supp. 2008). The trial court held a hearing on the motion. The State argued that Cantrell did not provide timely notice of an expert witness and claimed that it was not given notice until the day before trial. The State further contended that Cantrell exhibited bad faith because the request for notice was granted, and there was no

---

[2] Two suggestive pictures of his girlfriend were found on his phone.

4

way to have anticipated an expert because there was no notice or any notation of an expert in the file.

Cantrell contested the State's claims and argued that the oral notice he gave to Youree at the June 14, 2005 hearing sufficed because he was not given written notice that the trial court granted the State's motion for notice of defense experts. He further argued that there was no bad faith because he complied with the timely notice requirement, and the State should have anticipated the expert because the district attorney present at the June hearing, Youree, was aware of the expert. Cantrell did not reference the transcript for the June hearing at that point because the judge's regular court reporter was not present at the time, and he was unaware of where the transcript was or whether she had been present at the June hearing. However, Cantrell agreed to ask her at the lunch break whether she had transcribed the June hearing.

The trial court granted the motion to strike, but it indicated that it would review the transcript and revisit the ruling if the transcript demonstrated that Cantrell provided notice of the expert. The parties did not discuss the expert witness again until a hearing that occurred after Reyes was found guilty and right before sentencing.

During trial, the State introduced a video into evidence for identification purposes and to corroborate Corporal Leonard's statement that Reyes was wearing an "I Force" shirt when he was arrested at the mall. The video was recorded in the Hays County Justice Center's investigation room the day after Reyes's arrest and was approximately three and a half minutes long.

In the video, the camera appeared to be angled from the doorway. It showed

5

Officer Johnson in the room and Reyes's backside as he walked into the investigation room with "I FORCE" printed largely across the back of his t-shirt. Reyes then sat in a chair facing the doorway and remained there for the rest of the video. Officer Johnson began to advise Reyes of his rights, but before he could finish, Reyes said, "I reserve the right not to make any statements." Reyes, however, agreed to allow Officer Johnson to finish advising him of his rights. When Officer Johnson finished, Reyes also invoked his right to an attorney.

When the State first introduced the video, Cantrell objected and stated, "I object. We can't cross-examine Officer Johnson. No. 2, there is no relevance in this case. I am invoking his right to counsel for this jury. He hasn't asked the guy what was he wearing. That's it. I object." When the State sought to admit the video into evidence, Cantrell objected again stating, "Your Honor, we object and re-urge our objection that it violates *Crocker*. We're not able to cross-examine Officer Johnson at this time[,] and it violates the rulings of the Court of Criminal Appeals as well as the United States Supreme Court of America." Both objections were overruled, and the jury watched the entire video and listened to the accompanying audio.

During trial, the prosecution asked Officer Leonard questions about the content of the video:

> Q:    So, actually, really, the only thing that really is on that tape is a person invoking his Constitutional rights and wanting to stop questioning and ask for a lawyer, right?
>
> A:    Being Mirandized by the detective and invoking his rights.

Reyes's counsel did not object during this exchange. He also did not object when Officer

6

Leonard explained that an accused person invoking his rights does not indicate guilt:

Q:    Would you say that a person invoking his Constitutional right and asking for a lawyer indicates guilt?

A:    No, sir.

Q:    If you were falsely accused of a crime, would you ask for a lawyer?

A:    Yes, sir.

Q:    There is nothing about that that the jury should read into it, right?

A:    No, sir.

Q:    It doesn't mean he's guilty because the investigator informs him of his rights and he says, "I want to exercise my rights?"

A:    Yes, sir.

Q:    And part of the reason you wear that uniform is because you believe in that, right?

A:    Yes, sir.

Reyes was found guilty at trial of attempted improper photography, and the County Court at Law Number 1 of Hays County[3] imposed a $4,000 fine and one year confinement in the Hays County Jail, which was suspended and probated for two years.  Reyes now appeals.

## II.  Invocation of Constitutional Rights

By his first issue, Reyes argues that the trial court abused its discretion when it allowed the jury to hear him invoking his rights in the video, in violation of the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Texas

---

[3] The case was transferred to the Thirteenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. TEX. GOV'T CODE ANN. § 73.001 (Vernon 1998).

Constitution. U.S. Const. amend. V; Tex. Const. art. I, § 10. However, the State contends that Reyes did not properly preserve this issue for appeal because he did not object on these grounds at trial. We agree with the State. Evidence of a defendant invoking his rights is inadmissible as evidence of guilt and is constitutional error. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991). However, except for fundamental errors, even constitutional guarantees can be forfeited by failing to properly object at trial. *See* Tex. Code Crim. Proc. Ann. art. 1.14(a) (Vernon 2005); *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002).[4] The court of criminal appeals has held that the use of a defendant's silence as an admission of guilt is not fundamental error and can be waived absent a proper objection in the trial court. *Gibson v. State*, 516 S.W.3d 406, 409 (Tex. Crim. App. 1974). Likewise, allowing a jury to hear that the defendant invoked his or her right to counsel is not fundamental error. *See Cacy v. State*, 901 S.W.2d 691, 699 (Tex. App.–El Paso 1995, pet. ref'd).

To preserve for appeal an issue based on a ruling admitting evidence, the record must contain a timely objection or motion to strike that states the "specific ground of objection if the specific ground was not apparent from the context." Tex. R. Evid. 103(a)(1); *see also* Tex. R. App. P. 33.1(a)(1)(A); *Lankston v. State*, 827 S.W.2d 907, 908 (Tex. Crim. App. 1992). An objection that apprises the trial judge of the basis of the complaint is sufficient to preserve error:

---

[4] Fundamental errors include: (1) the denial of the right to counsel; (2) the denial of the right to a jury trial; (3) the denial of ten days' preparation before trial for appointed counsel; (4) the absence of jurisdiction over the defendant; (5) the absence of subject-matter jurisdiction; (6) the prosecution under a penal statute that does not comply with the state constitution's separation of powers clause; (7) jury charge errors resulting in egregious harm; (8) holding trials at a location other than the county seat; (9) prosecution under an ex post facto law; and (10) comments by a trial judge which taint the presumption of innocence. *Saldano v. State*, 70 S.W.3d 873, 888-89 (Tex. Crim. App. 2002).

The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts. As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it. Of course, when it seems from context that a party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost.

*Lankston*, 827 S.W.2d at 909; *Ketchum v. State*, 199 S.W.3d 581, 593 (Tex. App.–Corpus Christi 2006, pet. ref'd). Error is not preserved for appeal if the objection made at trial does not correspond to the issue raised on appeal. *Gallo v. State*, 239 S.W.3d 757, 768 (Tex. Crim. App. 2007); *Heidelburg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).

On appeal, Reyes argues that the video was inadmissable because it showed him invoking his constitutional rights to remain silent and to the assistance of counsel, and that playing the video was improper bolstering of the State's witness, De La Garza. At trial, Reyes objected on the basis of cross-examination and relevance and did not give any indication that he was complaining that the audio allowed the jury to hear him invoke his constitutional rights or that it bolstered De La Garza's testimony. Because Reyes's complaints on appeal are not the same as those raised in the trial court, his complaints are waived. *Gallo*, 239 S.W.3d at 768; *see Gibson*, 516 S.W.2d at 409; *see also Valentine v. State*, No. 14-00-01035-CR, 2002 WL 392650, at *3 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (not designated for publication) (failure to object to video on ground that it showed defendant invoking rights waived issue on appeal).

However, even if the correct objection had been made and overruled at trial, the error would have been harmless. "[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after

9

the complained-of ruling. This rule applies whether the other evidence was introduced by the defendant or the State." *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *see also Valentine,* 2002 WL 392650, at *3. The jury heard Officer Leonard testify that the video showed Reyes invoking his rights. He explained further that invoking one's rights does not signify guilt and that he would exercise the same right if wrongly accused of a crime. Reyes did not object to any of this testimony. *Leday,* 983 S.W.2d at 718; *see also Valentine,* 2002 WL 392650, at *3. Accordingly, we overrule Reyes's first issue.

### III. Exclusion of Expert Witness

Reyes argues that the trial court erroneously excluded his expert witness. Texas Rule of Evidence 103(a)(2) states that when evidence is excluded, error cannot be assigned unless "the substance of the evidence was made known to the court by offer, or was apparent from the context within which questions were asked." TEX. R. EVID. 103(a)(2). The offering party must advise the court of the substance of the excluded evidence by an offer as soon as practicable, but before the court's charge is read to the jury. TEX. R. EVID. 103(b). An offer of proof can be in either question-answer form or a brief statement by counsel that includes a "reasonably specific summary of the evidence offered" and its relevance, if it is not apparent. *Warren v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (citing *Love v. State*, 861 S.W.2d 889, 901 (Tex. Crim. App. 1993)); *McAfee v. State*, 204 S.W.3d 868, 873 (Tex. App.–Corpus Christi 2006, pet ref'd).

In the instant case, no offer of proof was made before or during the guilt-innocence phase of the trial. Cantrell's arguments regarding the expert were based on his timely notice to the prosecution; he never asked to take the witness on voir dire, offered a report,

or otherwise informed the court of the subject-matter the expert intended to cover with her testimony. Therefore, error was not preserved for appeal, and we find Reyes's second issue is waived.[5]

## IV. Legal and Factual Sufficiency

By his third issue, Reyes argues that the evidence is legally and factually insufficient to support his conviction. Reyes contends that the evidence was insufficient to show that (1) he had the criminal intent to accomplish the illegal act of improper photography for the sexual gratification of any person, and that (2) he committed an act amounting to more than a mere preparation that tended but failed to effect the commission of the offense.

When conducting a legal sufficiency review, the court must "examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury, as the sole judge of the credibility of the witness, is free to believe or disbelieve all or part of the witness's testimony. *Jones v. State,* 984 S.W.2d 254, 257 (Tex. Crim. App.1998). We defer to "'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

---

[5] It is also noteworthy that the trial judge's ruling on the motion to strike was not final. The trial judge asked to see the transcript of the June hearing at which Cantrell stated he provided notice of the expert witness, and when that transcript was not immediately available, he indicated that he might still change his mind once he reviewed the transcript. Therefore, Reyes was given further opportunity to present the pretrial transcript to the trial judge showing that he had provided notice to the State of the expert, and to get a reversal on the ruling. Reyes did not take that opportunity until after trial.

Also, Reyes argues in his brief that the expert's testimony "would [have] better aid[ed] the jury in their assessment of punishment." However, Reyes was given the chance to present the expert at the punishment stage of trial when the judge denied the State's motion in limine to not allow expert testimony from experts that had not previously testified. Reyes did not present the expert witness's testimony during the punishment phase. Because Reyes got what he requested—the opportunity to present expert testimony at the sentencing stage—there is no error to review. *Smith v. State*, 907 S.W.2d 522, 532 (Tex. Crim. App. 1995).

to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19). The court on appeal does not engage in a second evaluation of the weight and credibility of the evidence, but only ensures the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

In contrast, when conducting a factual sufficiency review, the evidence is viewed in a neutral light. *Garza v. State*, 213 S.W.3d 338, 344 (Tex. Crim. App. 2007). The verdict is only to be set aside if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust; or (2) is against the greater weight or preponderance of the evidence. *Watson v. State,* 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State,* 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). While we may disagree with the jury's conclusions, we must avoid substituting our judgment for that of the jury, particularly in matters of credibility. *Drichas,* 175 S.W.3d at 799; *see also Watson*, 204 S.W.3d at 414.

A person commits the offense of criminal attempt if that person, "with the specific intent to commit an offense . . . does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." TEX. PENAL CODE ANN. § 15.01(a). Intent may be inferred by the accused's acts, words, or conduct. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998); *Rivera-Reyes v. State,* 252 S.W.2d 781, 785 (Tex. App.–Houston [14th Dist.] 2002, no pet.); *Parramore v. State*, 853 S.W.2d 741, 745 (Tex. App.–Corpus Christi 1993, writ ref'd). "Additionally, intent is a fact question to be determined by the trier of facts from all the facts and circumstances in evidence." *Parramore*, 853 S.W.2d at 745 (citing *Hemphill v. State*, 505 S.W.2d 560, 562 (Tex. Crim. App. 1974)).

In the instant case, the jury could logically infer that Reyes had the specific intent to take an improper photograph of C.M. without her consent in order to gratify his sexual desire. The jury heard eyewitness testimony from De La Garza explaining how she was in close proximity to Reyes, witnessed him crouch down behind C.M. and extend his arm with camera phone in-hand under her skirt while she was not looking, and heard a "click." De La Garza also testified that Reyes was startled when he realized he was being observed. She further testified that Reyes immediately fled the store. Finally, C.M.'s mother testified that Reyes uttered that he had not done anything or taken any pictures before she even asked him anything. The jury heard eyewitness testimony from De La Garza and from C.M.'s mother regarding Reyes's actions, words, and conduct during the incident that could allow an inference of the requisite intent.

We likewise reject Reyes's challenge to the factual sufficiency of the evidence supporting his conviction. Reyes intermingles his factual sufficiency argument with a discussion of the doctrines of legal and factual impossibility. Legal impossibility exists when an actor intends to commit a crime, but the completed act would not actually amount to a crime. *Lawhorn v. State* 898 S.W.2d 886, 891 (Tex. Crim. App. 1995). Factual impossibility exists where, due to a physical or factual condition unknown to the actor, the attempted crime could not be completed. *Id.* Further, "if the intended end is a legally proscribed harm, the failure to effect it because of the lack of a factual condition necessary to its occurrence, is no defense (*i.e.* factual impossibility)." *Id.* at 892.

Reyes argues that it was legally impossible for him to have committed the crime of improper photography. However, Reyes's intended act of taking a picture under C.M.'s skirt without her consent, and with the intent to arouse or gratify his sexual desire,

13

constituted an actual crime. Therefore, legal impossibility is not applicable to this case. Further, Reyes concedes that factual impossibility is not a defense in the context of attempt crimes. Based on the eyewitness testimony, the jury's guilty verdict hardly appears to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, rendering the verdict factually insufficient. We overrule Reyes's third issue.

## V. Conclusion

Because we have overruled all of Reyes's issues, the judgment of conviction is affirmed.

_____
GINA M. BENAVIDES
Justice

Publish.
*See* TEX. R. APP. P. 47.2(b).

Opinion delivered and filed this
the 17th day of July, 2008.