

NUMBER 13-13-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT SCHMITT,                                                                 Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

**On appeal from the 319th District Court
of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

A trial judge found Robert Schmitt guilty of evading arrest or detention with a motor vehicle, a state jail felony, *see* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(B) (West Supp. 2011) (defining evading arrest or detention), and assessed a jail sentence of two years. *See id.* § 12.35(a) (West 2011) ("[A]n individual adjudged guilty of a state jail

felony shall be punished by confinement in a state jail for any term of not more than two years or less than 180 days . . . .").  Schmitt now appeals his conviction by one issue in which he contends that the evidence is insufficient to support the trial judge's verdict of guilt.  Because we conclude that the evidence is sufficient to support the conviction, we overrule Schmitt's issue and affirm the judgment of the trial court.

## I. BACKGROUND

The sole witness at trial, Officer Paul Janko of the Corpus Christi Police Department, testified that at approximately 10:45 p.m. on October 8, 2011, he was on patrol when he encountered Schmitt's vehicle on a "dark" road, where it was idling with its headlights on, blocking the lane of traffic, and facing Officer Janko's police cruiser, which was traveling in the opposite lane of traffic.  Officer Janko testified that he and Schmitt were driving the only two vehicles on Fawn Drive, where the initial encounter took place.  As Officer Janko's vehicle came within a distance of approximately fifty to one hundred feet, Schmitt "took off at a high rate of speed."  Officer Janko testified that he then turned around and activated his "lights," "siren," and "everything else."  Later in his testimony, Officer Janko indicated that the "lights" he turned on were his red and blue police lights.  According to Officer Janko, Schmitt was approaching the intersection of Fawn Drive and Waldron Road when Officer Janko completed his turnaround and activated his police lights and siren.  Officer Janko testified that he then saw that Schmitt "blew past" a stop sign and turned onto Waldron Road.  According to Officer Janko's testimony, he saw Schmitt fail to stop at a second stop sign while Schmitt was travelling on Waldron Road.

Schmitt continued travelling at a high rate of speed throughout Officer Janko's pursuit, though Officer Janko admitted that he did not "have the opportunity to determine what that speed was." Officer Janko testified that "the speed limit . . . [was] 30" miles per hour and he "had to drive at least maybe 60" miles per hour to pursue Schmitt. He caught up to Schmitt at a second stop sign on Waldron Road. According to Officer Janko, by this time, Schmitt could have safely pulled over anywhere on the side of the road. Specifically, Officer Janko testified that Schmitt had a safe place to stop on Waldron Road because there was a shoulder with plenty of clearance. Officer Janko estimated that it took some ten seconds between the time he caught up to Schmitt and the time Schmitt eventually stopped at his residence on Webb Street.

Officer Janko testified that throughout the pursuit, he was within "visual range" of Schmitt and that traffic was low. Officer Janko also testified that the distance between where he did his turnaround and where Schmitt eventually stopped at his residence was about three-quarters of a mile and that the pursuit lasted some thirty-one seconds. Based on numerous traffic stops that Officer Janko has made over his thirteen-year career, he did not believe that Schmitt was obeying his commands to pull over.

When asked if Schmitt made any statements to him about why he did not stop, Officer Janko testified that Schmitt said, "I was scared." In addition, at the conclusion of the bench trial, Schmitt's attorney offered, and the trial court admitted into evidence, Defendant's Exhibit 3, a copy of the arrest report, without any request from the defense that the trial court limit in any way its consideration of the exhibit. In relevant part, the report indicated that, when Schmitt was finally detained, he "was crying and said, 'I'm sorry for not stopping.' He said he was scared." The report also contained statements

3

confirming that Officer Janko was driving a "marked police vehicle" at the time of the pursuit and that Officer Janko activated his "emergency equipment for a traffic stop" before Schmitt turned onto Waldron Road.

## II. ANALYSIS

In one issue, Schmitt contends that the evidence is insufficient to establish that he knew Officer Janko was attempting to arrest or detain him.

### A. Standard of Review

When we review the sufficiency of the evidence to support a verdict under the sufficiency standard set out in *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "This standard accounts for the fact[-]finder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quotations omitted). "[W]e determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. (quotations omitted). "Our review of all of the evidence includes evidence that was properly and improperly admitted." *Id*. "When the record supports conflicting inferences, we presume that the fact[-]finder resolved the conflicts in favor of the prosecution and therefore defer to that determination." *Id*. "Direct and circumstantial evidence are treated equally." *Id*. "Circumstantial evidence is as probative as direct

4

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Id*.

## B. Applicable Law

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quotations omitted).

In relevant part, the Texas Penal Code defines the offense of evading arrest or detention as follows: "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). An offense is a state jail felony if the suspect uses a motor vehicle. *Id*. § 38.04(b)(1)(B).

## C. Discussion

The Amarillo Court of Appeals has noted that "while speed, distance, and duration of pursuit may be factors in considering whether a defendant intentionally fled, no particular speed, distance, or duration is required to show the requisite intent if other evidence establishes such intent." *Griego v. State*, 345 S.W.3d 742, 751 (Tex. App.—Amarillo 2011, no pet.). In *Griego*, the Amarillo Court of Appeals cited an unpublished opinion by this Court involving factual circumstances that closely parallel those presented in this case. *See id*. (citing *Robinson v. State*, Nos. 13-10-00064-CR, 13-10-

5

00065-CR, 2011 WL 861152, at *5 (Tex. App.—Corpus Christi Mar. 10, 2011, no pet.) (mem. op., not designated for publication) (concluding that, even though appellant only drove approximately three blocks at a slow speed, her own testimony established that she had seen police lights but had refused to stop because she was "afraid")).

In *Robinson*, we quoted a decision by the Texarkana Court of Appeals that explained that "'fleeing' is anything less than prompt compliance with an officer's direction to stop." *Robinson*, 2011 WL 861152, at *5 (quoting *Home v. State*, 228 S.W.3d 442, 446 (Tex. App.—Texarkana 2007, no pet.)). In upholding the sufficiency of the evidence in *Robinson*, we borrowed language from a second opinion by the Texarkana Court of Appeals, which explained that "fleeing slowly is still fleeing." *Id.* (citing *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.—Texarkana 2007, no pet.)).

In this case, Schmitt argues that the evidence was insufficient to prove that he knew that Officer Janko was attempting to arrest or detain him; however, as noted above, there was evidence that Officer Janko pursued Schmitt with his police siren and lights activated for three-quarters of a mile, that the pursuit lasted some thirty-one seconds, and that Schmitt failed to stop at two stop signs while Officer Janko was pursuing him. *See Parramore v. State*, 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1993, pet. ref'd) ("Knowledge and intent can be inferred from conduct of, remarks by, and circumstances surrounding the acts engaged in by an accused."). There was also evidence that after being arrested, Schmitt told Officer Janko, "I'm sorry for not stopping," thus indicating that he knew that Officer Janko had been attempting to detain him as he continued to travel in his vehicle. *See id.*

6

We are not persuaded by Schmitt's argument that this case is like *Griego*, where the court held that "Appellant, having met the officers traveling in the opposite direction with their lights and sirens already activated, could not have known from that encounter that the officers were attempting to arrest or detain him." *Griego*, 345 S.W.3d at 752. In this case, the evidence showed that Schmitt was alone on a dark road when a marked police cruiser operated by Officer Janko approached him in a "head on," face-to-face manner such that a rational trier of fact could infer that the official police markings of the vehicle were visible and known to Schmitt, who was sitting in the driver's seat of his vehicle, which was idling with its lights on in the opposite lane. After seeing the approaching patrol car, Schmitt "took off at a high rate of speed." Officer Janko then immediately made a 180 degree turn in his police cruiser and activated its siren and red and blue police lights, which a rational trier of fact could infer were visible and known to Schmitt given that it was a "dark" road and the vehicles were in close proximity to each other. On this record, a rational trier of fact could have reasonably found that after Officer Janko made a 180 degree turn, activated the siren and lights on his police cruiser, and caught up with Schmitt at the second stop sign on Waldron Road, Schmitt knew he was being pursued by a peace officer who was attempting to detain him. *See* TEX. PENAL CODE ANN. § 38.04(a); *Jackson*, 443 U.S. at 324 (holding that a defendant "is entitled to . . . relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

Schmitt asks that we, in essence, replace the trial judge as the finder of fact by holding that, as a matter of law, thirty-one seconds is not enough time for an individual

7

to know that a police officer is trying to detain him. We are reminded of this Court's proper role in conducting a sufficiency review:

> Under the *Jackson* standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. Rather, it is to position itself as a final, due process safeguard ensuring only the rationality of the factfinder. The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt.

*Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988); s*ee also Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012) ("The reviewing court is not to assess the evidence as a 'thirteenth juror.'") (quoting *Moreno*, 755 S.W.2d at 867).

Accordingly, we base our decision on our review of the evidence in the light most favorable to the State, drawing reasonable inferences in favor of the State's case and the trial court's judgment. *See Clayton*, 235 S.W.3d at 778. Furthermore, because our decision in this case should not be construed so harshly that an innocent person could be falsely convicted, we emphasize that the exact amount of time is not the basis for our holding. Rather, we base our holding on the totality of the circumstances, including what transpired before, during, and after the thirty-one second pursuit. The cumulative force of the incriminating circumstantial evidence in this case—including Schmitt's sudden departure upon seeing a marked police cruiser, his failure to stop at two stop signs as he fled, and his apologies to Officer Janko after he was arrested—was sufficient to prove that Schmitt knew that Officer Janko was trying to detain him after he "took off at a high rate of speed" and that Schmitt knew that Officer Janko was continuing his effort to detain him as Schmitt disregarded traffic laws in an effort to get

8

away from Officer Janko.  *See* TEX. PENAL CODE ANN. § 38.04(a).  On this record, a rational trier of fact could have found guilt beyond a reasonable doubt.  *See Jackson,* 443 U.S. at 324.  Accordingly, Schmitt's sole issue is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.


NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
30th day of December, 2013.