

# NUMBER 13-21-00286-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DAMIEN CAVAZOS,                                                         Appellant,

**v.**

THE STATE OF TEXAS,                                                     Appellee.

## On appeal from the 94th District Court of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Benavides

Appellant Damien Cavazos was convicted by a jury for assaulting a public servant,

a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b)(1). The trial court assessed

Cavazos's punishment at eight years' imprisonment. *See id.* § 12.34(a). Cavazos appeals

his conviction on the grounds that: (1) the evidence was insufficient to prove the

necessary mental state; (2) the trial court should have sua sponte declared a mistrial and inquired into Cavazos's sanity at the time of the incident; and (3) his sentence is grossly disproportionate to the seriousness of the alleged offense. We affirm.

## I.    BACKGROUND

Captain Javier Jasso of the Corpus Christi Fire Department testified at trial that on May 18, 2018, he, two medics from the fire department, and Officer Jamie Wingo of the Corpus Christi Police Department responded to a "man down call," in which it was alleged that someone was "laying out in the parking lot." When they arrived on the scene, they discovered an unconscious Cavazos.

Officer Wingo believed Cavazos was intoxicated because "[h]e had like a bar wristband on his wrist like one of the colorful bands you get at a bar[,] and you could smell it, you could smell the alcohol." Captain Jasso recalled seeing "a little bit of vomit on [Cavazos's] shirt."

Captain Jasso explained that they used an "ammonia tab," which "is a capsule" with "a very pungent odor" to rouse Cavazos. When Cavazos awoke, "he start[ed] pushing away the medics and flailing his arms around." Officer Wingo described Cavazos at this point as "combative," and she decided "to arrest him for public intoxication because he's not going to be cooperative for [the medics] to treat him." As Captain Jasso and the medics were assisting Officer Wingo in restraining Cavazos on the ground, Captain Jasso observed that "Cavazos leaned over and took a bite into [Officer Wingo's] leg."

Officer Wingo testified that Cavazos initially bit her on her "inner thigh," and then "bit [her] a second time" on the outside of her thigh. During the second bite, "[h]e was

2

latched on, like a fish on a hook." The bites "broke the skin through [her] pants" and "left teeth indentions in [her] leg for like a couple of months." Officer Wingo testified that she had to "hit [Cavazos] in the face" and pepper spray him to force him to unclench his teeth. She further confirmed that "it was painful, for sure, to be bitten." Officer Wingo's body camera footage from the incident and pictures of bite marks on her legs were admitted as evidence.

The jury found Cavazos guilty of assaulting a public servant. Cavazos elected to have his punishment assessed by the trial court, which sentenced him to eight years' imprisonment. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02.

## II. SUFFICIENCY OF THE EVIDENCE

In a multifarious first issue, Cavazos argues that: (1) the evidence was insufficient to prove the necessary culpable mental state; and (2) the trial court should have "stopped the trial, declared a mistrial, and ordered that a mental health expert be appointed to determine whether or not [Cavazos] may have been insane at the time of his arrest." (emphasis omitted).

### A. Standard of Review & Applicable Law

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

3

theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

In reviewing evidence for sufficiency, we consider all the evidence presented in the light most favorable to the verdict to determine whether the trier of fact was justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This generally means that we resolve "any ambiguities in the evidence in the prosecution's favor." *Brooks v. State*, 634 S.W.3d 745, 748 (Tex. Crim. App. 2021). While the State "must prove each essential element of an offense beyond a reasonable doubt[,] . . . it need not exclude every conceivable alternative to a defendant's guilt." *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016).

The hypothetically correct jury charge in this case would permit a guilty verdict if the State proved that Cavazos "intentionally, knowingly, or recklessly cause[d] bodily injury to another," and Cavazos assaulted someone he knew to be "a public servant while the public servant [wa]s lawfully discharging an official duty." Tex. Penal Code Ann. § 22.01(a)(1), (b)(1). "A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id.* § 6.03(b). Proof of a greater culpable mental state necessarily proves a lesser mental state. *Id.* § 6.02(e); *see Wasylina v. State*, 275 S.W.3d 908, 909 (Tex. Crim. App. 2009).

A person's mental state is a fact issue to be determined by the jury from the surrounding circumstances. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). "Proof of a culpable mental state generally relies on circumstantial evidence." *Gilder v.*

4

*State*, 469 S.W.3d 636, 639 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989)). "Intent can be inferred from the acts, words, and conduct of the accused." *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); *Parramore v. State*, 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd).

## B.     Analysis

### 1.     Culpable Mental State

Assault is a result of conduct offense, the gravamen of which is the resulting bodily injury. *Price v. State*, 457 S.W.3d 437, 442 (Tex. Crim. App. 2015). We therefore first examine Cavazos's culpability with respect to the injury that occurred. *See Alvarado v. State*, 704 S.W.2d 36, 39 (Tex. Crim. App. 1985).

Captain Jasso testified that it took him, Officer Wingo, and two medics to subdue Cavazos. The footage from Officer Wingo's body camera showed Cavazos yelling and directing gendered insults towards Officer Wingo. According to Officer Wingo, Cavazos "latched on" to her with his teeth and did not let go until she both hit and pepper sprayed him. A rational jury could infer that Cavazos acted knowingly, because a person would be aware that biting someone with that much force will generally cause bodily injury. *See Bin Fang v. State*, 544 S.W.3d 923, 929 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also* TEX. PENAL CODE ANN. § 1.07(a)(8) (defining bodily injury as "physical pain, illness, or any impairment of physical condition").

Officer Wingo testified that she was wearing both her uniform and badge at the time Cavazos bit her. This evidence raised a presumption that Cavazos knew he was

5

assaulting a public servant. *See* TEX. PENAL CODE ANN. § 22.01(d) (providing that an "actor is presumed to have known the person assaulted was a public servant . . . if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant"); *Clementson v. State*, 492 S.W.3d 802, 807 (Tex. App.—Amarillo 2016, pet. ref'd). In light of this presumption, the evidence here was sufficient to show that Cavazos acted knowingly in assaulting a public servant.

Cavazos argues that his level of intoxication at the time of the incident demonstrates that the State did not meet its burden to prove the culpable state of mind element. However, voluntary intoxication is not a defense to the commission of a crime. TEX. PENAL CODE ANN. § 8.04(a). "Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried." *Id.* § 8.04(b). In other words, rather than precluding a guilty verdict like the typical insanity defense, "such temporary insanity affects only the punishment to be attached to the crime." *Rodriguez v. State*, 513 S.W.2d 594, 595 (Tex. Crim. App. 1974); *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App. 1994); *Johnson v. State*, 452 S.W.3d 398, 407 (Tex. App.—Amarillo 2014, pet. ref'd).

The elements of an offense, "including the requisite mental state, are *not* affected by any evidence of intoxication." *Sakil v. State*, 287 S.W.3d 23, 28 (Tex. Crim. App. 2009). Evidence of voluntary intoxication "therefore may not be considered as having negated an element of an offense." *Rojas v. State*, 986 S.W.2d 241, 247 (Tex. Crim. App. 1998). One who voluntarily ingests a substance "should do so at the risk of whatever mental disturbances flow from that voluntary act, regardless that they may not fit within the

6

common understanding of being 'under the influence.'" *Afzal v. State*, 559 S.W.3d 204, 215 (Tex. App.—Texarkana 2018, pet. ref'd). Therefore, the evidence concerning Cavazos's state of intoxication is not relevant to our analysis as to the sufficiency of the State's evidence.

We conclude that the evidence was sufficient to show that Cavazos acted knowingly in causing Officer Wingo's bodily injury.

### 2. Temporary Insanity

Cavazos's second argument under this issue—that the trial court erred by not declaring a mistrial and appointing a mental health expert to determine Cavazos's sanity at the time he bit Officer Wingo—is wholly unavailing. Cavazos cites to Article 46B.021 of the Texas Code of Criminal Procedure to support this proposition, but that provision refers exclusively to a defendant's competency to stand trial. *See* TEX. CODE CRIM. PROC. ANN. 46B.021; *see also* TEX. R. APP. P. 38.1(i) (providing that appellant must make "*appropriate* citations to authorities" in his brief (emphasis added)).

We presume that a criminal defendant is sane and intends the natural consequences of his actions. *Ruffin v. State*, 270 S.W.3d 586, 591 (Tex. Crim. App. 2008). Cavazos did not provide notice that he intended to raise the insanity defense. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.051.There was also no suggestion in the underlying proceedings that Cavazos was incompetent to stand trial. *See id.* art. 46B.021; *Ballard v. State*, 514 S.W.2d 267, 268 (Tex. Crim. App. 1974) ("The trial court is only required to conduct a hearing on the issue of sanity sua sponte when evidence comes before him which is of sufficient force to create a reasonable ground for him to doubt defendant's

competency to stand trial."). Therefore, the trial court's duty to appoint a disinterested expert to examine Cavazos's sanity was not implicated whatsoever. *See id.* arts. 46B.021(a), 46C.101(a); *Hill v. State*, 320 S.W.3d 901, 904 (Tex. App.—Amarillo 2010, pet. ref'd) (citing *Gomez v. State*, Nos. 14-99-00465-CR & 14-99-00466-CR, 2001 WL 306275, at *1–3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2001, pet. ref'd) (not designated for publication)).

We overrule Cavazos's first issue.

### III.    DISPROPORTIONATE SENTENCING

Cavazos argues that the sentence imposed, eight years' imprisonment, was disproportionate to the harm caused, in violation of his rights under the Eighth and Fourteenth amendments. *See* U.S. CONST. amends. VIII, XIV.

### A.    Standard of Review & Applicable Law

A trial court's sentencing determination is reviewed for an abuse of discretion. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *see also Hargis v. State*, No. 13-21-00156-CR, 2022 WL 710081, at *1 (Tex. App.—Corpus Christi–Edinburg Mar. 10, 2022, no pet.) (mem. op., not designated for publication). When the sentence imposed is within the statutory limits, it is generally not "excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Alvarez v. State*, 525 S.W.3d 890, 892 (Tex. App.—Eastland 2017, pet. ref'd). However, "an individual's sentence may constitute cruel and unusual punishment, despite falling within the statutory range, if it is grossly disproportionate to the offense." *Alvarez*, 525 S.W.3d at 892 (citing *Solem v. Helm*, 463 U.S. 277, 287 (1983)). A third-degree felony is punishable by "any term of not

more than 10 years or less than 2 years" imprisonment. TEX. PENAL CODE ANN. § 12.34(a).

"Generally, an appellant may not complain of an error pertaining to his sentence or punishment if he has failed to object or otherwise raise error in the trial court." *Ponce v. State*, 89 S.W.3d 110, 114 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.); TEX. R. APP. P. 33.1(a); *Mercado v. State*, 718 S.W.2d 291, 296 (Tex. Crim. App. 1986). There is no "hyper-technical or formalistic use of words or phrases" required to preserve error. *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see also Hargis*, 2022 WL 710081, at *2. However, a party must still "let the trial judge know what he wants, why he thinks he is entitled to it, and do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *See Pena*, 285 S.W.3d at 464 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)); *see also Hargis*, 2022 WL 710081, at *2.

## B.    Analysis

The record reveals that Cavazos did not object to his sentence either when it was pronounced or in any post-judgment motion. *See Mercado*, 718 S.W.2d at 296. Rather than argue that error has somehow been preserved, Cavazos discusses the power of the judiciary to review decisions generally, citing *Marbury v. Madison*. 5 U.S. 137 (1803). But as was pointed out in *Marbury*, "[t]he distinction, between a government with limited and unlimited powers, is abolished, if those limits do not confine the persons on whom they are imposed, and if acts prohibited and acts allowed, are of equal obligation." *Id.* at 176–77.

Our constitution grants rulemaking authority to the supreme court and court of

9

criminal appeals, not to us. *See* TEX. CONST. art. 5, § 31(c). The rules of appellate procedure dictate that an error complained of on appeal must be first presented to the trial court. TEX. R. APP. P. 33.1(a). "Preservation of error is not merely a technical matter by which appellate courts seek to overrule points of error in a cursory manner." *Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004). "Fairness to all parties requires a party to advance his complaints at a time when there is an opportunity to respond or cure them." *Id.* Because Cavazos failed to object to his sentence prior to this appeal, he has failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Mercado*, 718 S.W.2d at 296.

We overrule Cavazos's second issue.

## IV.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
7th day of July, 2022.

10